UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

SIDNEI E. VALENTIM,            *
                                    *
      Plaintiff,             *
                                    *
        v.                  *
                                    *    Civil Action No. 14-cv-14103-ADB
CAROLYN W. COLVIN, Commissioner of  *
the Social Security Administration,      *
                                    *
      Defendant.          *
                                    *

**<u>MEMORANDUM AND ORDER</u>**

March 25, 2016

D.J. BURROUGHS,

       Plaintiff Sidnei E. Valentim ("Valentim") brings this action seeking judicial review of a decision of the Commissioner of the Social Security Administration (the "Commissioner") denying his claims for Supplemental Security Income ("SSI") and Social Security Disability Insurance ("SSDI"). Before the Court is Valentim's Motion for an Order Reversing or Remanding the Final Decision of the Commissioner [ECF No. 13], and the Commissioner's Motion to Affirm the Decision. [ECF No. 17]. For the reasons discussed herein, the Court <u>DENIES</u> Valentim's Motion to Reverse or Remand and <u>GRANTS</u> the Commissioner's Motion to Affirm.

## I.    LEGAL STANDARD

       "The Social Security Administration is the federal agency charged with administering both the Social Security disability benefits program, which provides disability insurance for covered workers, and the Supplemental Security Income program, which provides assistance for

the indigent aged and disabled." <u>Seavey v. Barnhart</u>, 276 F.3d 1, 5 (1st Cir. 2001) (citing 42

U.S.C. §§ 423, 1381a).

The Social Security Act provides that an individual shall be considered to be "disabled,"

for the purposes of the Supplemental Security Income program, if he or she is

> unable to engage in any substantial gainful activity by reason of any
> medically determinable physical or mental impairment which can
> be expected to result in death or that has lasted or can be expected
> to last for a continuous period of not less than 12 months.

42 U.S.C. § 1382c(a)(3)(A); <u>see also</u> 42 U.S.C. § 423(d)(1)(A). The inability must be severe,

such that the claimant is unable to do his or her previous work or any other substantial gainful

activity that exists in the national economy. <u>See</u> 42 U.S.C. § 1382c(a)(3)(B); 20 C.F.R. §

416.905; <u>see also</u> <u>Ross v. Astrue</u>, No. CIV.A. 09-11392-DJC, 2011 WL 2110217, at *2 (D.

Mass. May 26, 2011).

When evaluating a disability claim under the Social Security Act, the Commissioner uses

a five-step process, which the First Circuit has explained as follows:

> All five steps are not applied to every applicant, as the determination
> may be concluded at any step along the process. The steps are: 1) if
> the applicant is engaged in substantial gainful work activity, the
> application is denied; 2) if the applicant does not have, or has not
> had within the relevant time period, a severe impairment or
> combination of impairments, the application is denied; 3) if the
> impairment meets the conditions for one of the "listed" impairments
> in the Social Security regulations, then the application is granted; 4)
> if the applicant's "residual functional capacity" is such that he or she
> can still perform past relevant work, then the application is denied;
> 5) if the applicant, given his or her residual functional capacity,
> education, work experience, and age, is unable to do any other work,
> the application is granted.

<u>Seavey</u>, 276 F.3d at 5 (citing 20 C.F.R. § 416.920).

This Court has jurisdiction to review decisions of the Commissioner pursuant to Section

205(g) of the Social Security Act, 42 U.S.C. § 405(g). Section 205(g) provides that an individual

may obtain judicial review of a final decision of the Commissioner by instituting a civil action in federal district court. See 42 U.S.C. § 405(g). Under sentence four of Section 205(g), the court has the power "to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner . . . with or without remanding the cause for a rehearing." Id. A court's decision under sentence four, however, can be based only on a review of the administrative record of proceedings before the Commissioner. See Whitzell v. Astrue, 792 F. Supp. 2d 143, 147 (D. Mass. 2011) (quoting 42 U.S.C. § 405(g)). If a claimant presents new evidence to the court that was not contained within the administrative record, the court may not consider it. "If additional evidence is to be considered, it must be by way of remand[]" pursuant to sentence six of Section 205(g). Hamilton v. Secretary of Health & Human Servs., 961 F.2d 1495, 1503 (10th Cir. 1992); 42 U.S.C. § 405(g) ("The court may…at any time order additional evidence to be taken before the Commissioner…but only upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding . . . .").

## II.   FACTUAL AND PROCEDURAL BACKGROUND

### A.  Procedural Background

Valentim filed claims for SSDI and SSI on May 2, 2011, for an alleged disability that began on January 1, 2010. [Tr. 253-263].[1] Both of his applications were initially denied on August 11, 2011, and were denied again upon reconsideration on December 7, 2011. Id. at 114-115; 142-143. Valentim then requested a hearing before an ALJ, which occurred on February 12, 2013. Id. at 36. The day after the hearing, Valentim amended the onset of his alleged disability to May 1, 2011. Id. at 325. In a March 12, 2013 decision, the ALJ denied his claims for benefits. Id.

---

[1] References to pages in the transcript of the record proceedings are cited as "Tr. __."

at 13-30. Valentim filed a Request for Review on April 24, 2014, which the Appeals Council denied on September 8, 2014. Id. at 1-3; 11-12.

Valentim filed the Complaint in this action on November 6, 2014 requesting that the Court either reverse the Commissioner's decision to deny him benefits and award them retroactively, or, alternatively, remand the claims to the ALJ for reconsideration. [ECF No. 1]. The Commissioner answered the Complaint on May 7, 2015 [ECF No. 10], and both parties have since filed motions: on June 15, 2015, Valentim moved for an order reversing or remanding the Commissioner's decision [ECF No. 13], and on August 26, 2015, the Commissioner moved for an order affirming its decision. [ECF No. 17]. On November 23, 2015, following several extensions, Valentim filed a reply in response to the Commissioner's motion. [ECF No. 27].

### B. Factual Background

The following is a synopsis of the administrative record that was before the Commissioner.

### 1. Personal History

Valentim was born in Brazil on January 3, 1965. [Tr. 57]. He is a United States citizen, having come to the United States in 1987, and, at the time of the hearing, he lived in Everett, Massachusetts with his wife and son. Id. at 56-57; 275. He speaks Portuguese, and often uses the services of an interpreter for medical appointments. Id. at 478-834. He reported completing schooling in Brazil through the seventh grade, id. at 783, although the ALJ found that he completed a high school equivalent education. Id. at 28. He has work experience as a tractor-trailer truck driver, manager of a truck company, food service worker, and food deliverer. Id. at 94.

On October 21, 2010, Valentim pled guilty in the U.S. District Court for the Southern District of Texas to one count of transporting an undocumented alien within the United States for private financial gain, by means of a motor vehicle. Id. at 319. He was sentenced to three years probation. Id. at 320. According to Valentim's attorney, Valentim was incarcerated in federal prison in April 2011, though there's no corroborating evidence in the administrative record. Id. at 83. On May 9, 2011, Valentim reported to the Coolidge House, a Residential Re-Entry Center in Boston, as a special condition of his probation. Id. at 207. He was released from Coolidge House on July 8, 2011. Id.

### 2.  Medical Chronology[2]

On May 25, 2011, Valentim saw Claudia Epelbaum, a psychiatrist in the Portuguese Mental Health Team at the Cambridge Health Alliance, for an initial evaluation. [Tr. 676-679]. Valentim reported that he had mental problems all his life and had never been able to concentrate, finish a job, or complete a task. Id. at 676. He described himself as "nervous, anxious, and explosive" and said he was very impulsive and made decisions without analyzing his options. Id. Valentim reported that he had seen a psychiatrist seven years ago, and had been prescribed Seroquel, but stopped taking it because it made him feel sedated. Id. He told Dr. Epelbaum that he had been sexually abused at age 8 by older kids living in his neighborhood. Id. at 677. In her initial evaluation, Dr. Epelbaum diagnosed Valentim with impulse control disorder, ADHD, Anxiety NOS, Depression NOS, Mood disorder NOS and head trauma induced mental illness. Id. at 678. She directed Valentim to undergo neuropsychological testing and declined to prescribe medication until after the testing. Id. at 678-679.

---

[2] Because Valentim only challenges the ALJ's evaluation of his mental impairments, the medical chronology is limited to those impairments.

In his second appointment with Dr. Epelbaum, on July 1, 2011, Valentim reported that he was still anxious, and that his anxiety was at times very intense. Id. at 672. He reported episodes of increased anxiety with tremors and palpitations, and he requested medication to help with impulse control, agitation, and depression. Id. Dr. Epelbaum prescribed medication to stabilize Valentim's mood and to help decrease his anxiety and impulsivity. Id. at 673. On July 11, 2011, Valentim reported to Dr. Epelbaum that the medication had helped and he was feeling less anxious and agitated. Id. at 668. During that appointment, Valentim reported that he was trying to modify the conditions of his probation, so that he could live at home, and requested a letter from Dr. Epelbaum in support. Id. In a letter dated July 11, 2011, Dr. Epelbaum wrote that Valentim was being treated for Depression NOS, Anxiety NOS, and Impulse Control Disorder. Id. at 515. She stated that maintaining an active lifestyle, exercise, work, and helpful eating habits were paramount to improving Valentim's mental health. Id.

On July 11, 2011, Valentim also saw Dr. David Epstein, a primary care physician at Cambridge Health Alliance. Id. at 520. Valentim had been Dr. Epstein's patient for several years, and this was Valentim's first appointment since being released from incarceration. Id. at 514; 520. Valentim reported that he was very depressed and was experiencing headaches. Id. at 520-521. The record includes a letter from Dr. Epstein dated July 11 stating that Valentim's "incarceration was obviously worsening his depression." Id. at 512. Valentim returned to Dr. Epstein for an appointment on July 28, 2011, and reported that he remained depressed. Id. at 518-519. Dr. Epstein noted that his depression was better. Id. at 519. In a May 15, 2012 letter, Dr. Epstein stated that Valentim had been in that day for management of depression and hypertension. Id. at 763. He wrote that Valentim's depression was "very severe." Id.

The record also includes a letter dated February 5, 2013 stating that Valentim had been receiving individual psychotherapy with Osvail Dias, LICSW, and psychopharmacology treatment with Dr. Pedro Bonilla, M.D. Id. at 837. It does not, however, include medical records from either Dias or Dr. Bonilla.

### 3.  Medical Opinions

On February 12, 2013, Plaintiff's treating physician Dr. Epstein completed a mental health impairment questionnaire for the Plaintiff. [Tr. 839-846]. He diagnosed Valentim with Major Depression, and described symptoms including difficulty concentrating or difficulty thinking, decreased energy, sleep disturbance, and feelings of guilt or feelings of worthlessness. Id. at 839-841. He stated that Valentim had exhibited marked difficulties in, among other things, planning daily activities, initiating and participating in activities independent of supervision or direction, communicating clearly and effectively, cooperating with others, responding to supervisors, and holding a job. Id. at 843.

On February 12, 2013, Dr. Bonilla also completed a mental health impairment questionnaire for Valentim. Id. at 848-858. He diagnosed Valentim with Impulse Control Disorder, Depression NOS, and Anxiety, and found that Valentim had moderate limitations in his ability to relate with other people; understand, carry out and remember instructions; concentrate and attend to a work like task; and respond appropriately to co-workers. Id. at 848-850. He noted that Valentim had only slight limitations in his ability to respond to customary work pressures and perform simple tasks, but marked impairments in his ability to perform complex or varied tasks. Id. at 848-49. He also stated that Valentim had marked difficulties cooperating with coworkers, responding to supervisors, establishing interpersonal relationships, holding a job, and avoiding altercations. Id. at 858.

7

In September 2011, Paul Kaufman, M.D., an evaluating medical examiner working on behalf of the University of Massachusetts Disability Evaluation Services, determined that Valentim's depression and anxiety were severe, and that Valentim "[did] not have the mental capacity to perform even unskilled work activity." Id. at 771-773. He indicated that Valentim could not perform past relevant work and any other work. Id. at 775. Dr. Kaufman did not examine the Plaintiff and based his decision on Plaintiff's medical records. Id. at 765.

On December 1, 2011, Disability Determination Services consultant Michael Maliszewski, Ph.D. reviewed Valentim's medical records in connection with Plaintiff's application for SSI and SSDI. Id. at 123-26. Dr. Maliszewski concluded that the Plaintiff's severe affective disorders and anxiety disorders caused him only mild restrictions of activities of daily living, mild difficulties in maintaining social functioning, moderate difficulties in maintaining concentration, persistence or pace, and no repeated episodes of decompensation of extended duration. Id. at 124-125. He also found that Plaintiff was not significantly limited in his ability to carry out short and simple instructions, to carry out detailed instructions, to sustain an ordinary routine without special supervision, and to make simple work-related decisions. Id. at 125-126.

Consultive examiner Stuart Clayman, Ph.D., met with Valentim for a psychological evaluation on December 7, 2012. Id. at 806. Because Valentim does not speak English, Dr. Clayman was unable to administer psychological tests, but he did conduct a psychodiagnostic interview with the aid of an interpreter. Id. at 812. Dr. Clayman concluded, following the interview and a review of Valentim's medical records, that Valentim met the full diagnostic criteria for Depressive Disorder, NOS, with an onset date of May 2011. Id. He also diagnosed Valentim with Post-Traumatic Stress Disorder and Intermittent Explosive Disorder, both with an

onset date during childhood. Id. Dr. Clayman found that Valentim's ability to sustain

concentration and focus was moderately-to-severely impaired and that his ability to perform

activities of daily living was mild-to-moderately impaired. Id. at 808. He concluded that

Valentim would "remain completely disabled for work by symptoms of depression, anxiety,

anger and concentration problems and because of resulting severe loss of ability to maintain

social functioning, severe inability to sustain concentration and severe inability to cope with

stress." Id. at 813.

### 4.  Hearing Testimony

Plaintiff appeared and testified before an ALJ on February 13, 2013, represented by

attorney Constance Brown. [Tr. 36]. He testified with the aid of a Portuguese interpreter. Id. at

39. Valentim testified that from December 2005 through August 2010, he ran his own trucking

company, but was arrested in August 2010 for human trafficking. Id. at 66, 70, 78. He stated that

he was subsequently convicted of human trafficking and imprisoned from April 2011 to June

2011, after which he spent two additional months in Coolidge House, as a condition of his

probation. Id. at 71, 83. He further testified that in 2011, he had two or three different jobs,

including three-to-four month stints as a helper at different restaurants, and that he last worked

from July to October 2012, as a food delivery worker. Id. at 63, 80, 84. Valentim stated that he

first received psychiatric treatment in 2011, and that he is currently unable to work because he is

too "perturbed with [his] head." Id. at 74.

Vocational Expert Elaine Cargleeano also testified at the hearing. She stated that

Valentim had experience as a tractor-trailer truck driver (semi-skilled), a truck company manager

(skilled), and a food service worker and deliverer (unskilled). Id. at 94. She then responded to a

series of hypotheticals posed by both the ALJ and Valentim's attorney. Id. at 95-101.

### C.  The ALJ's Decision

The ALJ issued a decision on March 12, 2013 denying Valentim's application for SSI and SSDI benefits. [Tr. 13-30]. In reaching this conclusion, the ALJ performed the five-step sequential evaluation required by 20 C.F.R. § 416.920. First, he determined that Valentim had not engaged in substantial gainful employment since April 1, 2011. Id. at 19. Next, he found that Plaintiff had two severe impairments, for depression and anxiety, but that his physical impairments of gout, high blood pressure with headaches, and poor vision were non-severe. Id. at 19-20. The ALJ then found that these two severe mental impairments did not meet or medically equal the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. Id. Specifically, he found that Valentim's mental impairments, considered singly and in combination, do not meet or medically equal the criteria of listings 12.04 (for affective disorders) or 12.06 (for anxiety-related disorders). Id. at 20.

Finally, the ALJ determined that Valentim had the RFC to perform his prior jobs as a tractor-trailer driver and food service worker. Id. at 28. In addition, and in the alternative, using the vocational expert's testimony, the ALJ determined that considering Valentim's age, education, and transferable skills, Valentim could perform a significant number of jobs in the national economy, including as a laundry worker, worker/janitor, and groundskeeper. Id. at 29.

### III.   DISCUSSION

Valentim contends that this Court should reserve or remand the ALJ's decision because the ALJ erred at step three, four, and five of the sequential analysis. With respect to step three, Valentim argues that the ALJ incorrectly found that he does not satisfy the "paragraph B" criteria of listings 12.04 and 12.06. With respect to steps four and five, Valentim argues that the ALJ's conclusions regarding Plaintiff's mental impairments are not supported by substantial evidence,

that the ALJ's weighing of medical opinion was an error of law, and that the ALJ's conclusion that there are a significant number of jobs in the national economy that Valentim could perform was arbitrary and capricious, not supported by substantial evidence, and an error of law. The Commissioner responds that the ALJ's decision is supported by substantial evidence and does not suffer from an error of law. The Court agrees with the Commissioner and therefore affirms the ALJ's decision to deny Valentim SSI and SSDI benefits.

### A.  The ALJ's Step Three Determination Is Supported by Substantial Evidence

Valentim argues that the ALJ's step three finding that he did not meet or equal the severity of listings 12.04 and 12.06 is not supported by substantial evidence and is arbitrary and capricious. As an initial matter, the Court notes that it may only review an ALJ's factual findings to determine if they are supported by substantial evidence, and not whether they are arbitrary and capricious. See, e.g., Hagan v. Colvin, 52 F. Supp. 3d 167, 173 (D. Mass. 2014) ("This Court's authority to review an ALJ's decision is limited: the Court may only set aside the decision if it resulted from legal error or if the ALJ's factual findings were not supported by substantial evidence."). Substantial evidence means "'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229, (1938)); see also Hagan, 52 F. Supp. at 173 ("The court must uphold the ALJ's determination even if the record arguably could justify a different conclusion, so long as it is supported by substantial evidence.") (citation omitted).

Valentim specifically argues that there is not substantial evidence to support the ALJ's finding that he does not satisfy the "paragraph B" criteria of listings 12.04 and 12.06.

Under "paragraph B" of listings 12.04 and 12.06, the claimant must show that his mental impairments cause at least two of the following: marked restriction of activities of daily living; marked difficulties in maintaining social functioning; marked difficulties in maintaining concentration, persistence or pace; or repeated episodes of decompensation, each of extended duration. 20 C.F.R. Pt. 404, Subpt. P, App. 1, §§ 12.04, 12.06. The ALJ determined that Valentim's mental impairments did not cause any of these symptoms, and Valentim argues that the ALJ should have found that it caused at least two—namely, marked difficulties in social functioning and concentration, persistence, or pace. The Court finds that there is substantial evidence to support the ALJ's step three finding. The ALJ reasonably relied upon Valentim's testimony, as well as the opinions of Dr. Bonilla and Dr. Maliszewski, to conclude that Valentim had only mild difficulties with social functioning and moderate difficulties with concentration, persistence or pace.

With respect to the social functioning prong of Paragraph B, Dr. Maliszewski found Valentim to have no social interaction limitations and Dr. Bonilla opined that Valentim had only moderate difficulties relating to other people, responding appropriately to co-workers, and responding appropriately to supervision. [Tr. 848]. Valentim argues that the ALJ ignored other statements made by Dr. Bonilla in his opinion, in which Dr. Bonilla noted that Valentim in fact had marked difficulties in cooperating with coworkers, responding to supervisors, establishing interpersonal relationships, holding a job, and avoiding altercations. Id. at 857. In that same section of the opinion, however, Bonilla stated that Valentim did not have marked difficulties getting along with family, friends, or neighbors; or interacting and actively participating in group activities. Id. Dr. Epstein, another treating physician, reached the same conclusion, finding that Valentim did not have marked difficulty getting along with family, friends, or neighbors;

12

establishing interpersonal relationships; or interacting and actively participating in group

activities. Id. at 843. Accordingly, though there is some medical evidence suggesting that

Valentim had marked difficulties with certain aspects of social functioning, there is substantial

evidence to support the ALJ's finding that overall, Valentim did not have marked difficulties

with social functioning. See Doyle v. Paul Revere Life Ins. Co., 144 F.3d 181, 184 (1st Cir.

1998) ("Substantial evidence . . . means evidence reasonably sufficient to support a conclusion.

Sufficiency, of course, does not disappear merely by reason of contradictory evidence. . . . [The]

question [is] not which side [the court] believe[s] is right, but whether [the Commissioner] had

substantial evidentiary grounds for a reasonable decision. . . ."); Rodriguez Pagan v. Sec'y of

Health & Human Servs., 819 F.2d 1, 3 (1st Cir. 1987) (explaining that the court "must affirm the

[Commissioner]'s resolution, even if the record arguably could justify a different conclusion, so

long as it is supported by substantial evidence").

Next, with respect to the concentration prong of Paragraph B, both Dr. Bonilla and Dr.

Maliszewski opined that Valentim had only moderate difficulties with concentration, persistence

and pace. [Tr. 137; 848]. That Dr. Epstein, Valentim's treating physician, found otherwise, does

not mean that the ALJ's determination is unsupported by substantial evidence. See Clayton v.

Astrue, No. CIV.A. 09-10261-DPW, 2010 WL 723780, at *6 (D. Mass. Feb. 16, 2010) (noting

that "a treating physician's conclusions may be rejected by the Commissioner when

'contradictory medical advisor evidence appears in the record'") (quoting Keating v. Sec'y of

Health & Human Servs., 848 F.2d 271, 276 (1st Cir.1988)); Thompson v. Barnhart, No. CIV. A.

05-11051-DPW, 2006 WL 2506035, at *3 (D. Mass. Aug. 28, 2006) ("[W]hile the reviewing

court must take into account contradictory evidence, 'the possibility of drawing two inconsistent

conclusions from the evidence does not prevent an administrative agency's finding from being

supported by substantial evidence.'") (quoting <u>Penobscot Air Servs., Ltd. v. F.A.A.</u>, 164 F.3d 713, 718 (1st Cir. 1999)); <u>Arruda v. Barnhart</u>, 314 F. Supp. 2d 52, 72 (D. Mass. 2004) (explaining that an ALJ may "downplay the weight afforded a treating physician's assessment of the nature and severity of an impairment where . . . it is internally inconsistent or inconsistent with other evidence in the record including treatment notes and evaluations by examining and nonexamining physicians"). Moreover, the ALJ reasonably discounted the opinion of Dr. Epstein, since he is not a psychiatrist specialist, and his opinion is not supported by mental health treatment notes, but instead, claimant's subjective complaints. <u>See</u> 20 C.F.R. § 404.1527(c)(5) ("We generally give more weight to the opinion of a specialist about medical issues related to his or her area of specialty than to the opinion of a source who is not a specialist."); <u>Rodriguez Pagan</u>, 819 F.2d at 3 (holding that a treating physician opinion based excessively on claimant's subjective complaints is not entitled to controlling weight); <u>Hutchinson v. Astrue</u>, No. CIV.A. 10-30214-RWZ, 2012 WL 1642201, at *12 (D. Mass. May 9, 2012) ("[W]hen evaluating medical reports based in large part on subjective accounts or descriptions, the ALJ may consider the nature, frequency and credibility of the underlying source material.").

Plaintiff complains that the ALJ improperly relied on the opinion of Dr. Maliszewski, a non-treating State agency physician, and failed to consider the medical opinion of any of Plaintiff's treating physicians or medical professionals. The ALJ did not, however, solely rely on Dr. Maliszewski's opinion on step three—he also used the opinion of Dr. Bonilla, a treating physician. Further, the ALJ adequately explained why he was giving less weight to the other medical opinions. [Tr. 27]. To the extent that Valentim complains that the ALJ ignored other parts of the record, this is not grounds for remand or reversal. The ALJ is "not required to discuss every piece of evidence in the record when making his or her decision." <u>Nadeau v. Colvin</u>, No.

14

CIV.A. 14-10160-FDS, 2015 WL 1308916, at *11 (D. Mass. Mar. 24, 2015) (citing Santiago v.

Sec'y of Health and Human Services, 46 F.3d 1114 (1st Cir.1995)). Here, the ALJ thoroughly

summarized Plaintiff's mental health treatment history and he addressed each medical opinion.

[Tr. 23-26]. In sum, the Court finds that there was substantial evidence to support the ALJ's step

three finding.

### B.   The ALJ's Step Four Determination Is Supported by Substantial Evidence

Next, Valentim challenges the ALJ's Residual Functional Capacity ("RFC") finding. The

ALJ determined that Valentim retained the RFC to perform a full range of work at the sedentary,

light, and medium exertional levels, and could perform at least simple, routine tasks, as well as

semi-skilled work. [Tr. 22]. Valentim contends that this RFC was based on an error of law, is not

supported by substantial evidence, and is arbitrary and capricious. "At the RFC assessment stage,

the claimant has the burden of proof that she is disabled." DiAntonio v. Colvin, 95 F. Supp. 3d

60, 70 (D. Mass. 2015). Having reviewed the record as a whole, the Court finds that Valentim

has not met this burden and that the ALJ reasonably weighed the at-times inconsistent evidence

in the record before making an RFC finding supported by substantial evidence.

First, Valentim contends that the ALJ erred in finding that his mental impairments

developed only recently. In his decision, the ALJ stated that "in terms of the claimant's alleged

mental impairments, the undersigned finds that this is only a recent impairment, which was

alleged on reconsideration and not in the initial claim." [Tr. 26]. This observation that

Valentim's mental impairments were recent did not factor into the ALJ's ultimate RFC finding.

In addition, there is substantial evidence that Valentim's mental impairments recently developed.

In his initial claim for disability, Valentim alleged only the following conditions: gout, high

blood pressure, and bad vision in both eyes. Id. at 108. The initial claim did not allege any

mental impairments. Upon reconsideration, Valentim stated that his conditions had changed and that starting in April 2011, he had begun to be treated for depression and severe headaches. Id. at 116-117. Moreover, Valentim did not submit any health treatment notes from before 2011.

Second, Valentim disputes the ALJ's finding that his mental health could improve. He specifically challenges the ALJ's statement that "Dr. Epelbaum believed he was capable of improvement, and overall good mental functioning with treatment compliance." As with the previous argument, this observation did not factor into the ALJ's ultimate RFC finding. Regardless, the ALJ's finding was supported by medical evidence. In a letter dated July 11, 2011, Dr. Epelbaum wrote that, "Maintaining an active lifestyle, exercise, work, as well as healthful eating habits are paramount to patient's improvement in mental health. Of note, contact with his family and network of support will also provide a stronger basis for his gradual improvement." [Tr. 515]. From this statement, the ALJ reasonably concluded that Valentim's mental health could improve.

Third, Valentim contends that in determining his RFC, the ALJ did not give sufficient weight to the opinions of his two treating physicians: Dr. Epstein and Dr. Epelbaum. With respect to Dr. Epstein, Valentim argues that the ALJ should have given more weight to his February 2013 RFC questionnaire, which indicated that Valentim had marked limitations in his ability to perform in all areas in a "Routine Work Setting," as well as marked difficulties planning daily activities, initiating and participating in activities independent of supervision or direction, communicating clearly and effectively, cooperating with others, responding to supervisors, and holding a job. The ALJ acknowledged these findings in his opinion. [Tr. 25]. In the same RFC questionnaire, Dr. Epstein also indicated that Valentim did not have marked limitations cooperating with coworkers, responding to those in authority, avoiding altercations,

establishing interpersonal relationships, and completing tasks in a timely manner. Id. at 843-844.

Dr. Bonilla, Valentim's treating psychopharmacologist, submitted an RFC Questionnaire that

largely contradicted Dr. Epstein's. Dr. Bonilla noted that Valentim had only slight limitations in

his ability to perform simple work and to respond to customary work pressures and only

moderate limitations in his ability to carry out instructions and concentrate and attend to a work

like tasks. Id. at 848.

The ALJ gave little weight to Dr. Epstein's findings because: (1) Dr. Epstein was a

primary care physician, not a psychiatric specialist; (2) his opinion was not supported by

Plaintiff's mental health treatment notes; and (3) his opinion appeared to be based on Plaintiff's

subjective complaints. [Tr. 27]. These were proper reasons to discount Dr. Epstein's opinion,

which Valentim largely does not challenge. First, because Dr. Epstein was Valentim's primary

care physician and not a psychiatric specialist, and his opinion was both internally inconsistent

and contradicted by other medical evidence, the ALJ justifiably afforded his opinion less weight.

See e.g., Arruda v. Barnhart, 314 F. Supp. 2d 52, 72 (D. Mass. 2004) (finding that relevant

regulations "permit the ALJ to downplay the weight afforded a treating physician's assessment

of the nature and severity of an impairment where . . . it is internally inconsistent or inconsistent

with other evidence in the record including treatment notes and evaluations by examining and

nonexamining physicians"). Second, the ALJ correctly observed that Dr. Epstein's finding was

not supported by mental health treatment notes. There is no evidence of regular mental health

treatment. Given the absence of objective support, the ALJ reasonably concluded that Dr.

Epstein's opinion was based on Valentim's subjective complaints and should therefore be given

less weight. See Santiago v. Barnhart, No. 01-30090-KPN, 2004 WL 759639, at *7 (D. Mass.

Apr. 9, 2004) ("The First Circuit has long acknowledged that an administrative law judge is not

required to take a claimant's subjective allegations at face value."); <u>Mason v. Astrue</u>, No. CIV.A. 12-30054-KPN, 2013 WL 2247583, at *4 (D. Mass. Feb. 1, 2013) ("[A]an administrative law judge can discredit a medical opinion that is based largely on unsupported subjective complaints."); <u>see also</u> <u>DaSilva-Santos v. Astrue</u>, 596 F. Supp. 2d 181, 185 (D. Mass. 2009) ("The court may not reweigh the evidence or substitute its own determination for that of the Commissioner. Drawing factual inferences, making credibility determinations, and resolving conflicts in the evidence are responsibilities of the Commissioner.").

With respect to Dr. Epelbaum, Valentim argues that "the ALJ's failure to give great weight to, or even mention, the opinion of Dr. Epelbaum is . . . arbitrary and capricious." [ECF No. 14 at 15]. Contrary to Valentim's argument, the ALJ did not ignore Dr. Epelbaum's opinion. The RFC section of the ALJ's opinion contains several paragraphs describing Dr. Epelbaum's treatment notes and diagnoses. [Tr. 23-24, 26]. According to Valentim, "the ALJ completely failed to mention Dr. Epelbaum's diagnosis of Impulse Control Disorder, Depression NOS and Anxiety NOS . . . and also failed to note Dr. Epelbaum's finding that Plaintiff has an Axis V GAF score of 50." Yet, the ALJ explicitly described and accepted both findings in his opinion, noting that Dr. Epelbaum's mental health treatment notes, "support diagnoses for depression NOS, anxiety NOS, and impulse control disorder, as well as moderate psychiatric symptoms and functional limitations (GAF 50-54)." [Tr. 26]. Likewise, contrary to Valentim's argument that the ALJ did not give Dr. Epelbaum's sufficient weight, the ALJ did not discount Dr. Epelbaum's opinion at all, stating that his "residual functional capacity assessment is supported by treating psychiatric notes from [Dr.] Epelbaum." <u>Id.</u> at 27.

Fourth and finally, Valentim challenges two specific elements of the RFC—that he had "little to minor interference with concentration persistence and pace" and that he was capable of

performing simple and semi-skilled work. [ECF No. 14 at 17-18]. Both findings are supported by substantial evidence, and were based on reasonable credibility determinations that Valentim has not challenged and this Court declines to second-guess. See Doshi v. Colvin, 95 F. Supp. 3d 138, 146 (D. Mass. 2015) ("The hearing officer has the responsibility to weigh conflicting evidence and resolve issues of credibility."). For both, the ALJ reasonably discounted Valentim's subjective claimants, in the face of his contradictory and inconsistent statements in the record and during the hearing. See Cashman v. Shalala, 817 F. Supp. 217, 222 (D. Mass. 1993) ("In rendering a decision, the ALJ may discount subjective complaints . . . where there are inconsistencies in the entire record."). Moreover, because Valentim had past relevant work as a food service worker, which is unskilled, he would not have been found disabled whether or not the ALJ determined he was capable of performing semi-skilled work, in addition to unskilled work.

Valentim's remaining arguments relate to the ALJ's step five determination. "[A] remand is not essential if it will amount to no more than an empty exercise." Ward v. Comm'r of Soc. Sec., 211 F.3d 652, 656 (1st Cir. 2000). Because the ALJ's step four finding is an independent basis for denying Valentim's application, any deficiencies in the ALJ's step five finding are not grounds for remand. See 20 C.F.R. § 416.920 (a)(4)(iv) ("At the fourth step, we consider our assessment of your residual functional capacity and your past relevant work. If you can still do your past relevant work, we will find that you are not disabled."). Regarding the ALJ's alternative step five determination, Valentim argues that the ALJ erred in determining his educational history, and that the ALJ's hypothetical questions to the vocational expert omitted certain impairments. The Court shares Valentim's concern that the ALJ may have misinterpreted his educational history, although the testimony is not clear. Valentim's medical records indicate

that he went to school in Brazil through the 7th grade [Tr. 126], but his testimony could have

been understood to mean that he had the equivalent of a high school education. [Tr. 59]. Which

may be how the ALJ interpreted it. [Tr. 28]. Regardless, education is a factor to be considered

only on step five and any error in the ALJ's understanding of Valentim's testimony is therefore

harmless. See Rams v. Chater, 989 F. Supp. 309, 318 (D. Mass. 1997) ("At step four, however,

considerations of age, education, and work experience are not decisive because the ability to

perform only the past work, and not other jobs in the economy, is assessed."); 20 C.F.R. §

404.1560(b)(3) ("If we find that you have the residual functional capacity to do your past

relevant work, we will determine that you can still do your past work and are not disabled. We

will not consider your vocational factors of age, education, and work experience or whether your

past relevant work exists in significant numbers in the national economy."). Likewise, because

vocational expert testimony is not required at step four, Valentim's various challenges to the

ALJ's use of the vocational expert are unavailing. See Santos-Martinez v. Sec'y of Health &

Human Servs., 54 F.3d 764 (table), 1995 WL 275679, at *2 (1st Cir. 1995) ("At step 4 of the

disability determination process, however, the ALJ is not required to elicit the testimony of a

vocational expert."). On Step 4, the ALJ used the vocational expert for the limited purpose of

determining Valentim's vocational background and the skill requirements of his past work. The

vocational expert testified that Valentim had past experience as a tractor-trailer driver (medium

exertion, semi-skilled) and food service worker (medium exertion, unskilled). [Tr. 94]. Using

this information, the ALJ found that Valentim could perform his prior work "because his residual

functional capacity was for sedentary, light, and medium exertional work at a semi-skilled or

unskilled level, which are categories into which [his] two prior jobs fall." Id. at 28. Any

subsequent vocational expert testimony, including answers to hypothetical questions, was

solicited for the ALJ's alternative step five determination and therefore does not affect the validity of the separate and independent step four determination.

## IV.      CONCLUSION

For all the reasons detailed herein, the Plaintiff's Motion for an Order Reversing or Remanding the Final Decision of the Commissioner [ECF No. 13] is <u>DENIED</u>, and the Defendant's Motion to Affirm the Commissioner's Decision [ECF No. 17 is <u>ALLOWED</u>.

**SO ORDERED.**

Dated: March 25, 2016

<u>/s/ Allison D. Burroughs</u>
ALLISON D. BURROUGHS
U.S. DISTRICT COURT JUDGE